## Singer Manufacturing Co. v. Leeds.

1. *Explanation of Arbitrary Signs in Account Books.*—It is error to refuse to permit a party to explain the use of signs and peculiar forms of entry appearing in account books admitted in evidence.

2. *Contracts—Waiver of Conditions.*—In a printed form of contract between a company and an agent for the sale of its goods, was this clause: "It is also agreed and understood that no agreements outside of this printed form, or differing from it, shall be of any binding force unless they are confirmed by the said first party's agent at Chicago, Illinois." *It was held,* that the agent who negotiated and procured the signature to the contract in question, not being the agent in Chicago, had no authority to bind the company by waiving this condition of the contract, or to make any agreement different from or outside of the printed form of the contract.

Memorandum.—Action of assumpsit. Appeal from a judgment for $77.85, in favor of the plaintiff, rendered by the Circuit Court of Pike County; the Hon. JEFFERSON ORR, Circuit Judge, presiding. Heard in this court at the May term, A. D. 1892. Opinion filed October 17, 1892.

### APPELLANT'S STATEMENT OF THE CASE.

This was an action of assumpsit, originally commenced by appellee before a justice of the peace, to recover from the Singer Manufacturing Company a claim for commissions due and accruing to him on sales of sewing machines made by him as agent of the company. He claimed that the company was indebted to him in the sum of $140.65, viz.: $80.65 commissions accrued, and $60 accruing commissions.

The company denied the indebtedness and claim that the plaintiff was indebted to it for cash collected and not accounted for, machines sold and unaccounted for, a board bill assumed and paid by the company, and for refunds and reverted sales, etc., etc.

The plaintiff sought to support his claim by a book account, purporting to be a book of original entries, and made in the ordinary course of business.

The company denied the accuracy of the book and sought to impeach the same by its own books, and to maintain counter claim.

The case was tried by a jury, on appeal to the Circuit Court, and a verdict rendered assessing the plaintiff's damage at $77.85.

### APPELLANT'S BRIEF.

Entries must be transferred from the scratch book or slate recently after the transactions, and while the same are still fresh in the memory. Bedlich v. Baurlee, 98 Ill. 134; Greenleaf on Evidence, Sec. 115, 117, 118.

A book account is not admissible unless the items are contemporaneous with the transactions. Hisey v. Goodin, (Mo.) 7 West. Rept. 117. The entries must be made in the ordinary course of business. Beyer v. Sweet, 3 Scam. 120; Ruggles v. Gatton, 50 Ill. 412; Kibbe v. Bancroft, 77 Ill. 18. Where the books are complicated and extensive, proof of balance and general results is proper and should be admitted. Phillips on Ev., 4th ed., p. 594; Smith v. Peoria, 59 Ill. 412. A statement being rendered without objections being made is evidence of account stated. McCord et al. v. Manson, 17 Ill. App. 118.

W. E. WILLIAMS, attorney for appellant.

EDWARD YATES, attorney for appellee.

OPINION OF THE COURT, *the Hon. George W. Wall, Judge.*
The appellee recovered a judgment against the appellant

for $77.85 from which the latter has prosecuted its appeal to this court. The plaintiff's claim was for commissions accrued and accruing upon sales of sewing machines manufactured by defendant. The defendant denied the alleged indebtedness and set up a counter claim against plaintiff for cash collected and not accounted for, machines sold and not accounted for, etc.

We shall not go into a statement of the facts nor need we refer to all the points suggested by counsel in their printed arguments.

We think the court erred in refusing to permit the defendant to explain the meaning of certain arbitrary signs and peculiar forms of entry appearing in the account books of defendant which were admitted in evidence. Without such explanation the books would be of little, if any, use.

We think also the court erred in assuming, by instructions given for plaintiff, and by modifying instructions asked by defendant, that the company had waived the clause of the written contract in regard to refunding sums received by plaintiff on reverted sales. As we read the evidence there was nothing upon which to base such assumption. From the evidence of the plaintiff it appeared that he relied upon the declarations of one Dewell, who was an agent of the company, supervising manager for the county, for authority to disregard that clause of the contract. It is provided by the contract that no agreements differing therefrom or outside of it should be of binding force until confirmed by the company's agent in Chicago.

It appears that Dewell was the agent who employed the plaintiff and brought for signature this written contract, but he was not the agent in Chicago. It is claimed by plaintiff that he declared he would not insist on enforcing the clause in regard to the item in question. He says that he had this understanding from declarations made before and after the signing of the contract.

Whatever was said before was of course merged in the contract. We are inclined to believe from the entire evidence of plaintiff that this understanding, if any there was

between him and Dewell, occurred at the time the contract was signed and was really a part of the negotiations between the two men.

The plaintiff's testimony in chief was not very clear on the point, and on cross-examination he was asked, "Was not this talk at the time you signed it?" A. "After I signed, I asked him what contract it was, and he says, 'Here it is, put your name to it.' I said, 'What about this revert clause?' He said, 'I don't exact that from anybody.'" Considering all his testimony together we think this so-called agreement of waiver is to be regarded a part of the negotiations which were merged in the contract. It meant, "You sign this as it is written and I will not insist upon this clause," and it was signed with that understanding. The effect is to contradict the writing by evidence of a contemporaneous parol agreement, which is not admissible.

It is urged, however, that the proof shows a subsequent agreement waiving this clause. The contract in terms provided that no outside agreement differing therefrom should be made unless confirmed by the agent in Chicago. This was a clear negation of the power of the agent, Dewell, who presented the contract to the plaintiff, to make any such agreement.

It would not do to say that Dewell might, by his own declaration, establish his authority to set aside a clause of such importance. While it is true the company might waive this provision, the proof of waiver can not rest upon the bare assertion of an agent in conflict with the express terms of the writing, thereby overriding a provision which clearly showed he had not the power he assumed to have. To permit such proof would open a wide door to fraud. Before it can be held that this clause has been waived it must appear that the acts of the company through its authorized agents have been such as should estop it from insisting upon the clause, and as we have just said, the company can not be bound by the mere declaration of Dewell that he would not do so.

Manifestly he had no power to make such an agreement

for the company, and we do not find that the company, by its acts through any authorized agent, is estopped to enforce the contract as written.

Complaint is also made by appellant as to the refusal of the court to give instructions number nine and ten. These instructions merely advise the jury as to the meaning of the clauses in regard to note sales and lease sale—and no good reason appears why they should not have been given as asked. The clauses referred to are, however, quite clear, and it is difficult to see how a jury could misread them or reach a wrong conclusion because not advised as to their proper construction.

We can not, therefore, say that the case should be reversed for such refusal, but on another trial the court will no doubt obviate the complaint.

The judgment will be reversed and the cause remanded.